OPINION OF THE COURT
Robert E. Fischer, J.
In this action for a declaratory judgment, plaintiff addresses the abandonment of a town road by the defendant and the defendant’s declination to issue plaintiff a building permit. The defendant moves to dismiss the complaint as barred by a provision of the Highway Law which it deems to be a Statute of Limitations (CPLR 3211 [a] [5]).[1]
For purposes of this motion only, the facts set forth by the plaintiff are taken to be true. Plaintiff asserts that in August 1982 plaintiff purchased 143 + acres situated astride the Heath Back Road in the defendant town. For four years prior thereto plaintiff used the land and the town road for access thereto where he raised honeybees, produced honey and removed cut timber. Although he concedes that the town did not plow the road in the winter, a portion of it was graded by the town in 1981 and large stones placed therein by one of the landowners were removed.
Plaintiff had purchased the land in order to build his home on the property. In April 1983 when he talked with the Town Highway Superintendent about the road, the Superintendent told plaintiff there would be no problem with maintenance. However, one month later, according to the complaint, the *826 Town Board declared the road abandoned during its May 1983 meeting. The sole documentary evidence of abandonment submitted here is a certificate of the Superintendent, dated and filed in the oifice of the Town Clerk on August 3, 1983 with the signed consent of the members of the Board.[2]
Several months later, in October 1983, when the plaintiff sought a building permit from the town, his application was denied "because his property was served by an abandoned road”,[3] although plaintiff had never been served with a notice of the abandonment. This action was commenced by service of the summons and complaint on October 4, 1984.[4]
Highway Law article VIII is applicable to town highways, and section 205 thereof recites in pertinent part:
"Highways abandoned
"1. Every highway that shall not have been opened and worked within six years from the time it shall have been dedicated to the use of the public, or laid out, shall cease to be a highway; but the period during which any action or proceed *827 ing shall have been, or shall be pending in regard to any such highway, shall form no part of such six years; and every highway that shall not have been traveled or used as a highway for six years, shall cease to be a highway, and every public right of way that shall not have been used for said period shall be deemed abandoned as a right-of-way. The town superintendent with the written consent of a majority of the town board shall file, and cause to be recorded in the town clerk’s office of the town a written description, signed by him, and by said town board of each highway and public right-of-way so abandoned, and the same shall thereupon be discontinued.
"2. There may also be a qualified abandonment of a highway under the following conditions and for the following purposes, to wit: Where it appears to the town superintendent and said town board, at any time, that a highway has not become wholly disused as aforesaid, but that it has not for two years next previous thereto, been usually traveled along the greater part thereof, by more than two vehicles daily, in addition to pedestrians and persons on horseback, and it shall also appear to the superintendent of highways of the county in which such town is situate that a qualified abandonment of such highway is proper and will not cause injustice or hardship to the owner or occupant of any lands adjoining such highway after such superintendent shall have held a public hearing thereon upon giving at least twenty days’ written notice to such owners and occupants of such lands of the time and place of such hearing, they shall file and cause to be recorded in the town clerk’s office a certificate containing a description of that portion of the highway partly disused as aforesaid and declaring a qualified abandonment thereof; and at any time within thirty days after the rendering of the decision of said county superintendent thereon or the filing and recording of such certificate in the town clerk’s office any person deeming himself or herself aggrieved may, by serving written notice of appeal upon such county superintendent, appeal to the commissioner of transportation, who shall direct a rehearing before the commissioner of transportation or a deputy duly designated by him, who shall fix the time and place of such rehearing within the county in which such town is situate and shall have power to swear witnesses and take testimony and shall render decision thereon * * *
"Any action or proceeding involving the abandonment or qualified abandonment of a highway made pursuant to this *828 section must, in the case of abandonment, be commenced within one year from the date of filing by the town superintendent as provided in subdivision one of this section, or, in the case of qualified abandonment, be commenced within one year from the date the decision of the commissioner of transportation is rendered as provided in subdivision two of this section.” (Emphasis supplied.)
Initially we note that the substantive provisions of the abandonment section originated in the Laws of 1853 (ch 174, § 15) which — after certain amendments in the 19th Century, and the recent limitations addition (subd [2], second para, L 1966, ch 506) — have continued to date in substantially the same form (see, Historical Note, McKinney’s Cons Laws of NY, Book 24, p 81).
In this century, judicial interpretation of issues relating to total highway abandonment (subd [1]) appears to have been uniform. Thus, an early decision held that the abandonment certification of the Highway Superintendent is a mere ministerial act; that if there has not in fact been an abandonment of the highway for a period of six years prior to the certification, the certificate is null and void as the Highway Superintendent is deemed to have lacked subject matter jurisdiction (People ex rel. DeGroat v Marlette, 41 Misc 151, affd 94 App Div 592). This view was restated in Dotsko v Littlejohn (31 AD2d 245) and again in Matter of Flacke v Strack (98 AD2d 881, 882) where the court noted that: "Once a road becomes a public highway, it remains such until the contrary is shown * * * [and the town] had the burden of showing abandonment”; and even if the town failed to service a town highway, it has been held that such is not evidence of an abandonment within the terms of the statute (Hewitt v Town of Scipio, 32 AD2d 734; see also, Matter of Shawangunk Holdings v Superintendent of Highways of Town of Shawangunk, 101 AD2d 905).
It appears from the foregoing that abandonment has long been determined by the substantive conditions articulated in the statute as distinguished from the certification of the Superintendent, the latter being viewed as a ministerial act stating the conclusion that the highway "shall not have been traveled or used as a highway for six years” (Highway Law § 205 [1]). By this view, if the substantive facts constituting an abandonment were met, the road would "cease to be a highway” (Highway Law § 205 [1]) by operation of law, not by the Superintendent’s certification. Conversely, absent the factual support required by statute, the road would not be *829 deemed abandoned and the certification deemed "void for want of jurisdiction or power” (People ex rel. DeGroat v Marlette, 94 App Div, at p 595). Such "want of jurisdiction to render the certificate may be raised collaterally, either from an inspection thereof or upon extraneous proof’ (Dotsko v Littlejohn, 31 AD2d, at p 246).
If the fact of abandonment is the crucial event under the statute, the question arises as to whether the limitations provision presented here may be used to extinguish a landowner’s right to collaterally attack a factually unsupportable certification without impinging on constitutionally protected rights. In addressing that question we are initially met with the "simple, but well-founded, presumption that an act of the Legislature is constitutional and this presumption can be upset only by proof persuasive beyond a reasonable doubt” (Hotel Dorset Co. v Trust for Cultural Resources, 46 NY2d 358, 370). However, even that presumption cannot salvage an enactment which permits property rights to be extinguished without notice (Matter of Foreclosure of Tax Liens by County of Erie [Manufacturers & Traders Trust Co.], 103 AD2d 636); and absent a notice requirement in the statute, there is presented the further question of whether the limitations provision may be so construed as to find the vital notice requirement within the statute, for where constitutionality of an act is doubtful, "the court will first ascertain whether a construction of the act is fairly possible by which the question may be avoided” (McKinney’s Cons Laws of NY, Book 1, Statutes § 150 [c]).
The history of the statute reveals that before the limitations provision of the abandonment statute was added, the Superintendent’s certificate was not viewed as a reflection of nonusage, absent consent or notice to landowners (People ex rel. DeGroat v Marlette, 41 Misc 151, supra; Matter of Avoca Soil Improvement Co. v Wilber, 137 Misc 827, 830). It also appears that before the limitations provision was written into the statute, the landowner’s right to contest was addressed in terms of estoppel or consent (e.g., Matter of Graff v Town of Darien, 106 Misc 2d 104), with the current limitations period deemed applicable if there had been prior consent of the then owner of the land (supra), or failure of the prior owner to object to the abandonment at the time of certification (e.g., Matter of Corneilson v Sowles, 59 AD2d 637), with presumed constructive notice of subsequent purchasers of that certificate of abandonment (supra).
*830 The defendant points out here that the plaintiff landowner, although never served with notice of the abandonment, acknowledged that he was advised orally that the town declared the road abandoned within the one-year statutory period, and asserts that such constitutes the notice contemplated by the statute. As we view it, estoppel principles would not necessarily preclude the landowner from contesting the declaration, absent notice of the time when the limitations period becomes operative. The mere filing of a certificate with the Town Clerk would not, in and of itself, serve that purpose, for "[ojfficial files, in the absence of a statutory provision, carry no notice to the public” (Dunn v City of New York, 205 NY 342, 353; 42 NY Jur, Notice and Notices, § 10); and any attempt to affect the landowner’s rights by act of the municipality without notice would raise issues of due process: " ' "[DJue process,” unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances. ’ * * * '[DJue process is flexible and calls for such procedural protections as the particular situation demands.’ * * * Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected * * * More precisely * * * identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” (Matthews v Eldridge, 424 US 319, 334-335.)
Here, although Highway Law § 205 (2) provides for appropriate written notice to a landowner when a "qualified abandonment” of a highway is contemplated, no notice requirements were articulated in the statute under subdivision (1) where total abandonment is sought by the town. The absence of any notice requirement in the same statute upon determination for total abandonment supports the conclusion that the filing was simply intended to provide an internal record of a conclusion reached by public officers in relation' to the use of the highway. If, however, the limitations provision was intended to preclude an adjoining owner from enforcing other *831 wise viable property rights, due process considerations would require the "procedural protection” (Matthews v Eldridge, supra) of notice to the landowner: "When a statute confers authority upon an administrative governmental agency to make an order affecting rights of persons or property, and no provision is made for notice, the court will require reasonable notice.” (Isaac v Town of Queensburg, 247 App Div 263, 270, revd on other grounds 277 NY 37.)
Requiring notice to the adjoining owner of the Superintendent’s statement that the road is deemed abandoned — as in the case of a qualified abandonment — would not affect the broad purpose of the statute, nor render it ineffective; rather, such notice would merely afford the landowner timely opportunity to address the factual support for the statement required by the statute — nonuse for six years. If the town can establish that the road had not "been traveled or used for six years” within the terms of the statute — contrary to plaintiffs present assertions — judicial approval of the filing statement would be required, regardless of notice to adjoining owners. On the other hand, if the substantive facts did not support the Superintendent’s statement, then the filing would be ineffective and the recording a nullity.
Such appears to be the format of the statute as amended, in that the introductory portion of subdivision (1) establishes the substantive requirements for a determination of abandonment —"shall not have been traveled or used * * * for six years”, and it is only when the highway is "so abandoned” that the description of the abandoned highway may be filed by the Superintendent and recorded in the Town Clerk’s office.
Review of the bill jacket for guidance as to the intent of the Legislature in amending the statute appears to support the proposition that the filing was not intended to constitute notice to adjoining owners of the town’s intent. In a letter to the Governor’s Counsel, the sponsor of the bill (Assembly Print 2181, Intro 2140) not only premised any filing on a six-year abandonment in fact, but described the filing mechanism in terms of notice to the Town Board:
"Section 205 now provides that no certificate of abandonment can be filed unless the highway has not been opened or worked for six years after it has been dedicated to the use of the public or laid out.
"Certainly anyone interested would know within a period of six years that the road had not been used or worked, and this *832 bill only provides a year statute of limitations after the Town Superintendent, with the written consent of the majority of the Town Board, has filed the certificate of abandonment, which as I said before, cannot even be filed until after six years of failure to work the road, and has not been traveled or used as a highway for a six year period.
"The purpose of the bill is to allow the Town Board to actually know that the road has been officially abandoned, and when.
"I trust that this bill will receive favorable consideration.” (Letter [Apr. 25, 1966] of Assemblyman Louis H. Folmer; emphasis supplied.)
Thus, the stated purpose of the bill is not to afford notice to the adjoining landowners of any action by the town, but to provide to the Town Board knowledge of the Superintendent’s assessment of the status of the highway, with the validity of the certificate premised upon abandonment in fact, i.e., not "opened or worked for six years”.
Nowhere in the bill jacket — or in the bill jackets of previously vetoed bills on the same limitations issue (e.g., 1966 Sen Intro 1322, Print 1343; 1965 Assembly Intro 5984, Print 5162) —does it appear that such filing was intended to provide notice to the adjoining landowners or viewed as such.
The requirement of notice, therefore, would not make the statement of abandonment irrelevant. Rather, if intended to foreclose the right of the adjoining owner, the accuracy of the statement of abandonment contained in the Superintendent’s filing is presented procedurally as here, through an affirmative defense, thereby placing upon the town the burden of proving the facts supporting its plea. The filing is thereby deemed "merely a ministerial act” (see, Matter of Graff v Town of Darien, supra, at p 106, and supporting citations), with the burden of establishing abandonment in fact upon he who asserts it.
Such conclusion, however, would not resolve the present conflict. Thus, the town asserts — and plaintiff admits — he had actual notice of the filing of the certificate prior to the termination of the limitations period and could have met the statutory requirement had his pleading been timely served. More importantly, however, we do not know what property rights, if any, have been adversely affected by the abandon *833 ment of the road.[5] We are, therefore, factually uninformed whether the lack of notice may here in any way have caused a taking of property without due process of law. A notice requirement does not exist in a vacuum but must be attendant to some interest of one claiming such a right. Here we do not know how the certification of abandonment adversely affected plaintiff’s property, whether it caused him to be landlocked — and thus possibly a de facto taking — or otherwise adversely affected. We are advised only that a building permit application was rejected because of the abandonment but are not advised of the applicable zoning regulations which required that result. In short, we lack a factual basis for conclusively determining the motion presented.
Further, we note that this action is one for declaratory judgment, and we are required to declare the rights of the parties (CPLR 3001; see, Lanza v Wagner, 11 NY2d 317, 334). Here the denial of the building permit was the precipitating cause of the dispute; therefore, once sufficient facts have been made available, standards applicable to CPLR article 78 review might be determined to be more appropriate and conversion of the action (CPLR 103 [c]) had.
In view of the foregoing, we defer ruling on defendant’s motion until we can factually determine if plaintiff’s property rights have been adversely affected by the lack of initial notice of the filing of the certificate. To achieve that factual submission, counsel are directed to engage in any desired pretrial discovery within 60 days from the date hereof. Thereafter, counsel for plaintiff will have 20 days to submit to chambers necessary affidavits, statements of fact and legal memoranda. Counsel for defendant will have 20 days to respond. Counsel will then be advised the time, date and place when oral argument will be had on the submissions.

. The motion was originally returnable on December 19, 1985, during our nonjury Trial Term in Cortland County. On submission without argument, plaintiff thereafter contended that the motion should be denied since the bar of the limitations statute was not set forth as an affirmative defense in the answer. By show cause order of January 21, 1986, we permitted defendant to seek amendment of its pleading and after argument on February 21, 1986, granted the application (order Mar. 3, 1986). We do note, however, that the purported limitations bar is contained within the applicable statute (Highway Law § 205) and therefore the necessity to plead the bar as an affirmative defense is problematical (see, Romano v Romano, 19 NY2d 444, 447).

. The certificate recites the abandonment of not only the subject road, but of two others as well and states in pertinent part:
"That the highways in said Town of Homer known as the heath back road, the cummins hill road, and the red wing road, as hereinafter more particularly described, have not been traveled or used as highways for six and more years prior to the date of this certificate, and said highways are therefore hereby declared abandoned as highways and public rights of way pursuant to Highway Law section 205 * * *
"description of the heath back road:
"Beginning at a point in the center of the Heath Back Road, where it intersects the easterly highway boundary of the McGraw North Road (CR # 116A), said point being located 2975+ feet southerly measured from the intersection of the southerly highway boundary of Parks Road (CR # 116B) and said easterly highway boundary; thence traveling along the centerline of said Heath Back Road easterly and northerly a distance of 0.96 of a mile to a point on the southerly highway boundary of the before mentioned Parks Road, said point being located 1975+ feet easterly measured along the southerly highway boundary of the before mentioned Parks Road from the intersection of said highway boundary with the easterly highway boundary of the before mentioned McGraw North Road.
"The road to be abandoned is in Lot # 50 and described thus: being 0.96 of a mile in length and 3 rods in width and constitutes the Heath Back Road as a whole.”

. Neither the application nor the town’s zoning ordinance have been submitted and therefore we have no basis upon which to determine the propriety of the denial.

. We are advised by counsel for the plaintiff that the summons and complaint were prepared on or about July 12, 1984 — the date which appears on the summons. Counsel for the town first became aware of the pleadings on September 5, 1984, when the papers were initially served upon him.

. Heath Back Road, as described in the certificate, is "0.96 of a mile in length”. We are unaware of the number of landowners affected by the certificate and whether any were served with notice of the abandonment. Additionally, we do not know if on abandonment the town’s certificate of surrender of its easement of passage (1980 Atty Gen [Inf Opns] 102) still permits plaintiff access to a public highway.